**Dated: January 30, 2007**
**The following is ORDERED:**



Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

**STEPHEN DEAN HOLSEY**  Case No. 05-76108
Chapter 7

       Debtor,

**DANNIE G. KELLY, JR.**

       Plaintiff,

vs.  Adv. No. 05-8134

**STEPHEN DEAN HOLSEY**

       Defendant.

### O R D E R

On the 12th day of December, 2006, the above-referenced adversary proceeding came on for trial. Appearances were entered by Kenneth Smith, Attorney for the Plaintiff, and Carl Barnes, Attorney for the Defendant. Following the trial, the Plaintiff and Defendant filed additional written

arguments and legal authorities. After reviewing the evidence and testimony, as well as the additional briefs, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed. R. Bankr. P., in this core proceeding.

Defendant filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code on October 15, 2005. Plaintiff commenced this adversary proceeding on November 22, 2005, seeking a determination that the debt owed to Plaintiff by the Defendant is nondischargeable pursuant to 11 U.S.C. § 523(a)(2).

In late 2002, Plaintiff was living in Tulsa, Oklahoma, with his family. After seeing a newspaper advertisement, Plaintiff contacted Defendant about purchasing a mobile home. After a brief telephone conversation, Plaintiff and his wife at the time, Christina Adelaide Taylor, met with Defendant at a McDonalds in Glenpool, Oklahoma. At this meeting the parties discussed the price range the Plaintiff could afford to pay. Plaintiff testified at trial that he informed Defendant he could not afford a mortgage payment that exceeded $500.00 per month. Ms. Taylor, however, testified that they told the Defendant they could not afford more than $600.00 or $700.00 per month. Defendant also testified that he was told the Plaintiff's price range was between $600.00 and $700.00 per month.

At the Glenpool meeting, the Defendant told Plaintiff and Ms. Taylor about a mortgage credit program. Defendant stated at trial that he informed the Plaintiff and Ms. Taylor that they could receive up to $166.00 per month. Plaintiff stated, however, that he was told by the Defendant that he would actually receive a credit of $166.00 per month. Ms. Taylor's testimony indicates that she also believed they would be receiving a credit of $166.00 per month.

Plaintiff and Ms. Taylor decided to purchase a mobile home in Beggs, Oklahoma, where the

2

Plaintiff presently resides. A Real Estate Purchase Contract was signed by Plaintiff on December 5, 2002. Defendant signed the Purchase Contract as Vice President of TLC Homes of Green Country, Inc. A Loan Application and a Good Faith Estimate signed by Plaintiff on December 5, 2002, both provide an estimated monthly payment of $750.44.

As part of the agreement, Defendant was going to purchase the Plaintiff's home in Tulsa, Oklahoma, and assume the mortgage payments.

The closing on the property occurred on December 27, 2002, in Norman, Oklahoma. The parties were planning to complete the paperwork for the mortgage credit program as well as close on the property in Norman, Oklahoma, but were unable to do both due to time constraints. At the closing, Plaintiff expressed concern about the mortgage payment listed in the closing documents as nearly $800.00, but was told by Defendant that he could still complete the mortgage credit program application after closing on the property. After closing, however, Plaintiff later learned that he was not eligible for the program.

The Tulsa property was never transferred to the Defendant. Title to the Tulsa property is still in Plaintiff's name, and Plaintiff continues to make the monthly mortgage payments on both the Tulsa and Beggs properties. Plaintiff stated at trial that the Tulsa property needs substantial improvements before Plaintiff can rent or lease the property.

Section 523(a) of the Bankruptcy Code excepts from discharge any debt -

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A). Exceptions to discharge are narrowly construed and doubts are resolved in the debtor's favor. *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar),* 125 F.3d 1358, 1361

3

(10th Cir. 1997). The creditor bears the burden of proof as to each element by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279 (1991).

In order to prevail under § 523(a)(2)(A) a creditor must prove the following elements:

> The debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance was reasonable; and the debtor's representation caused the creditor to sustain a loss.

*Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996).[1]

In the present case, while it appears the Defendant did make false representations that Plaintiff relied on, Plaintiff failed to present sufficient evidence showing that Defendant made any false representation with the intent to deceive the Plaintiff. Defendant stated this was the first time he had worked with the mortgage credit program, and he did not know all the details of the program or the application process. Defendant also stated he was not aware the application process had to be completed by closing. Defendant also paid the $1,000.00 application fee for the Plaintiff. This Court does not believe that Defendant would pay the application fee if he had known the Plaintiff was not eligible or if he was attempting to deceive the Plaintiff.

In addition, several documents signed by both parties on December 5, 2002, show estimated monthly payments of $750.44. It appears the Plaintiff did not question this figure at that time. This Court finds that the Defendant did not make false representations with the intent to deceive the Plaintiff, and as a result the debt owed to Plaintiff by the Defendant is dischargeable.

IT IS THEREFORE ORDERED that the debt owed to Plaintiff by the Defendant is

---

[1] The United States Supreme Court has established that only "justifiable reliance" upon a false representation is required to sustain a nondischargeability claim under Section 523(a)(2)(A). *See Field v. Mans,* 516 U.S. 59, 74-75 (1995).

4

**dischargeable.**

###